375 So.2d 1165 (1979)
STATE of Louisiana, Appellee,
v.
Frank D. MATHEWS, Appellant.
No. 64079.
Supreme Court of Louisiana.
September 4, 1979.
Dissenting Opinion November 2, 1979.
*1166 Emile M. Weber, Weber & Weber, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of obtaining hotel accommodations by fraud, La.R.S. 21:21 (1968), sentenced to a one-year suspended sentence, and placed on probation, conditioned on his making restitution of $3,000 to the hotel within six months.[1] The single assignment of error urged on appeal urges that the trial court in this bench trial erroneously denied the defendant's directed motion of acquittal, La.C.Cr.P. art. 778.
The Charge
At the time of this 1974 offense (and before the statute's amendment in 1977), the offense of fraud in obtaining hotel accommodations, provided by La.R.S. 21:21 (1968) could be committed in four different ways: (a) obtaining accommodations without paying for them, with intent to defraud, 21(1); (b) obtaining credit with intent to defraud, 21(2); (c) removing baggage, etc., without first paying the charges due for food or accommodations, 21(3); and (d) paying by check, etc., knowing there are insufficient funds or credits for the payment, 21(4). (The full text of the statute is set forth in the appendix to this opinion.)
The state's evidence introduced at the trial had a tendency to prove that the defendant had obtained credit with no intent to pay for the lodging and meals (i. e., the (b) way of committing the offense) and that a check for $3,300 was given in partial payment of the account with knowledge that the bank account was insufficient to pay it (i. e., the (d) way of committing the crime). The defendant Mathews presented a strong defense to these aspects of his conduct.
However, as was pointed out by the defendant's motion for a directed verdict, the defendant was not charged with committing the offense by either of these methods.[2]
*1167 Instead, he was charged only with the (a) way of committing the offense: The bill of information charged only that the defendant Mathews did in 1974 "willfully and unlawfully obtain accommodations at a hotel, to-wit: LePavillon Hotel, without paying therefor, with the intent to defraud." (Italics ours.)
He was thus charged only under La.R.S. 21(1), which provides: "No person shall: (1) Obtain accommodations at any hotel, inn, boarding house or restaurant or procure food without paying therefor, with intent to defraud, except when credit is given by express agreement; * * *" (Italics ours.)
At the conclusion of the state's case, the defendant filed a motion for a directed verdict of acquittal. As one basis, he argued that "Article 21 [i. e., of the Criminal Code, now La.R.S. 21:21] clearly states that if there is any evidence of prior credit arrangements that it doesn't apply."
By this motion, the defendant correctly urged that the offense of "obtain[ing] accommodations at a hotel, . . . without paying therefor, with intent to defraud," La.R.S. 21:21(1), cannot be committed when credit has been expressly extended. The source of this statutory provision is the essentially identical provision of Act 12 of 1912, which was construed by us in State v. Sibley, 152 La. 825, 94 So. 410 (1922) to such effect: "It [the statute] has no application where credit has been given * * *" (as indeed the statutory provision expressly states).
Standard of Review
The defendant's motion for a directed verdict raises the issue of whether the state's evidence proved that a crime had been committed. Essentially, the issue before us is whether the state's evidence shows that credit had been extended, so that as (solely) charged the defendant was not guilty of obtaining accommodations with intent to defrauda crime that, under the statute, cannot be committed "when credit is given by express agreement." La. R.S. 21:21(1).
We have previously stated that, on appellate review, this court cannot reverse a trial court's denial of a directed verdict unless no evidence at all is presented to prove the crime and every essential element of it. State v. Victor, 368 So.2d 711 (La.1979) and jurisprudence cited. We thus do not review the sufficiency of the evidence.
However, we have also held, in reversing a conviction on the basis that no evidence supported it, that the issue of a total lack of circumstantial evidence to prove the crime or an essential element of it is decided by whether or not there is some evidence from which the trier of fact could reasonably conclude that beyond a reasonable doubt the accused had committed every element of the crime with which charged.
See: State v. Lindinger, 357 So.2d 500 (La.1978); State v. Schwander, 345 So.2d 1173 (La.1977); State v. Elzie, 343 So.2d 712 (La.1977), and decisions therein cited. See also: State v. Pittman, 368 So.2d 708 (La. 1979); State v. Linkletter, 239 La. 1000, 120 So.2d 835, 838, 840-41 (1960); State v. LaBorde, 234 La. 28, 99 So.2d 11 (1958).
A recent decision by the United States Supreme Court indicates that, additionally, federal due-process requirements now mandate review to assure against conviction on patently deficient evidence through an arbitrary finding of guilt. Rejecting and overruling the previous "no-evidence" criterion for federal habeas review of state convictions (by which review was precluded where there was "some" evidence), the nation's high tribunal held that the federal constitution's *1168 due-process protection of individuals mandates a broader standard of review. Jackson v. Virginia, ___ U.S. ___, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the United States Supreme Court there held that federal due process "constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." 99 S.Ct. 2786.
In the implementation of this due process right, the court further observed: "After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt," 99 S.Ct. 2789. In this regard, the court then held that, "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 99 S.Ct. 2789.
Thus, in Jackson, the United States Supreme Court held that due process requirements of the federal constitution are offended by a lesser standard of review than that enunciated by it. Although the issue arose in terms of federal habeas review, the Jackson holding also applies, inferentially, to state or federal direct review, where due process would be equally offended by a lesser standard.
The due-process standard of review mandated by Jackson is closely similar to, but may be slightly broader than, the standard of review previously enunciated by us for determining whether "no" evidence supports a conviction by circumstantial evidence, which we summarized above. It suggests, for instance, that review and reversal may be mandated where weak direct evidence is exculpatorily explainable by the overwhelming preponderance in the record of other evidence found credible by the trier of fact.
The Evidence
Under either standard of review, in the present case there is a total lack of evidence by which the trier of fact could have reasonably found beyond a reasonable doubt that credit had not been extended to the defendant Mathews at the time he secured accommodations for his firm at the LePavillon Hotel and subsequently. Thus, the evidence does not support his conviction.
The only state witness to the transaction was Gamble, a co-owner or partner in the operation of the hotel. He met the defendant in April, 1974, while the latter allegedly was staying at the hotel.[3]
In June of 1974, it was called to Gamble's attention that the defendant's bill was upwards of three thousand dollars, and he asked the defendant to make a payment on the account. The defendant furnished him a check dated June 21, 1974 in the amount of $3,300, which was returned a week later marked insufficient funds. In August, 1974, Gamble wrote the defendant to request payment of this n. s. f. check. By this time, the defendant owed $4,669.89.
It is obvious from this witness's testimony that the defendant had been extended credit by the hotel. Gamble himself speaks of requesting the defendant Mathews in June of 1974 "to have the account brought up to date and we would have to make arrangements to keep the account current." Tr. 13. Again, the witness seems to have acknowledged a credit agreement when he testified: "I started asking for money when I found out the bill got up in the two thousand dollar category, and I kept asking for money for a week until finally I got the $3,300 check." Tr. 24. To similar effect, when he testified: "* * * at the time our credit limit was around $4,500.00 before *1169 we started asking for money. I was not aware of the bill personally until it got into over $2,000.00." Tr. 25.
Although Gamble replied "definitely" to a question under cross-examination as to whether he denied any credit arrangement, Tr. 24, he also testified, Tr. 26: "I am not aware of anybody else extending them credit other than that I found out by meeting them through this fellow O'Neal, oh, within a week after they moved into the hotel. I don't know whether anybody else extended them credit. I am not aware of that." Tr. 26.
The witness also testified that the general manager of the hotel at the time was Andre Purio, who did not testify at the trial. And he admitted that "I would not know that," when asked: "But, you don't know whether your general manager made such an agreement, do you?" Tr. 34.
No other state witness proves that no credit was extended to Mathews by Purio at the time his corporation made arrangements to use the hotel services. Likewise, the uncontradicted testimony of defense witnesses corroborates Gamble's testimony that Mathews and his corporation had been extended credit by the LePavillon hotel management from the time they moved in the hotel in April, 1974 until they moved out a few months later.[4]
Conclusion
In summary, there is a total lack of evidence from which the trier of fact could reasonably find beyond a reasonable doubt, as required to prove this crime, that the hotel had not expressly given credit to the accused for the hotel accommodation and services. The trial court was in error in denying the motion for a directed verdict of acquittal.
When upon review this court finds no evidence supports conviction, we must enter a judgment of acquittal and order the discharge of the defendant. State v. Thompson, 366 So.2d 1291 (La.1978); State v. Liggett, 363 So.2d 1184 (La.1978). See also: Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Pittman, 368 So.2d 708 (La.1979).

Decree
For the reasons assigned, the conviction and sentence are annulled and set aside, and the defendant is ordered discharged.
CONVICTION ANNULLED; DEFENDANT DISCHARGED.
SUMMERS, C. J., dissents and assigns reasons.
MARCUS and BLANCHE, JJ., dissent.

APPENDIX
At the time of the present offense, La.R.S. 21:21, 22, as revised and re-enacted by Act 539 of 1968, was applicable, and it provided (prior to its amendment in 1977):
La.R.S. 21:21 Fraud in obtaining accommodations; worthless checks
No person shall:
(1) Obtain accommodations at any hotel, inn, boarding house or restaurant or procure food without paying therefor, with intent to defraud, except when credit is given by express agreement.
(2) Obtain credit with intent to defraud at any hotel, inn, boarding house or restaurant for food or accommodations by a false show of baggage or effects.
(3) Remove or cause to be removed any baggage or effects from any hotel, inn, boarding house or restaurant without the consent of the owner or manager before having paid the proper charges due for food or accommodations.
(4) Draw, endorse, utter, or deliver to any hotel, inn, boarding house or restaurant any check, draft, or order for the payment of money upon any bank or other depositary, in payment of the proper charges due for food, lodging, beverages or anything of value, knowing at the time that there is not sufficient credit with the drawee bank or other depositary for the payment in full of the instrument upon its presentation.
Whoever violates any provision of this Section shall be fined not more than five hundred dollars, or imprisoned, with or without *1170 hard labor, for not more than two years, or both.
La.R.S. 21:22 Prima facie evidence of intent to defraud
The failure of any person to pay the proper charges due for any food, lodging, beverages, or anything of value due to any hotel, inn, boarding house or restaurant before departing from the premises, without first personally appearing before the room clerk or other agent of the establishment before departing and protesting the amount alleged to be due, or without working out satisfactory credit arrangements for the payment thereof, is prima facie evidence of intent to defraud, within the meaning of R.S. 21:21; and the failure of the person drawing, endorsing, uttering or delivering any check, draft or order to any hotel, inn, boarding house or restaurant in payment of food, lodging, beverages or anything of value, to honor the same within five days after the receipt of written notice of its non-payment upon presentation, is prima facie evidence of intent to defraud, within the meaning of R.S. 21:21.
SUMMERS, Chief Justice (dissenting).
This majority opinion usurps the fact-finding prerogative of the trier of fact in its determination of guilt or innocence contrary to the specific limitation contained in Section 5(C) of Article V of the Constitution. That Article mandates that in criminal matters this Court's "appellate jurisdiction extends only to questions of law."
At the trial the testimony of the State's witnesses and witnesses for the defense were diametrically in conflict. The trial judge clearly believed the State's witnesses, and not those offered by the defense, because in this bench trial he found defendant guilty as charged.
Under the established jurisprudence of this Court, a ruling by a trial judge in a bench trial on a motion for acquittal may not be reversed on appeal unless there is no evidence of the crime or of an essential element thereof. State v. Little, 353 So.2d 255 (La.1977). Furthermore, this Court has consistently held that the language in Article 778 of the Code of Criminal Procedure allowing a directed verdict of not guilty after the close of the State's case "if the evidence is insufficient to sustain a conviction" refers to those proceedings in which the prosecution has produced no evidence at all to prove the crime charged or an essential element of that crime. State v. Youngblood, 321 So.2d 333 (La.1975).
The reliance on Jackson v. Virginia, ___ U.S. ___, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) to support the majority view is misplaced. That decision does not purport to invalidate Louisiana's constitutional limitation on review of facts by this Court in criminal cases. So deeply ingrained is the law's tradition of refusal to engage in after-the-fact review of jury deliberations, until the United States Supreme Court invalidates that concept in Louisiana's Constitution, I will adhere to the Louisiana Constitution.
NOTES
[1] The record contains a state motion to revoke the probation because he had failed to make restitution within six months. The record reflects no ruling on the motion, presumably because an appeal suspends the ruling appealed from, La.C.Cr.P. art. 913, and the six-month delay within which to make restitution would not commence running until the sentence was affirmed.
[2] Even though the misconduct in evidence proved another related offense, the accused could not, of course, be convicted of an offense for which he was not charged by the indictment (information). Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948). The accused must be informed of the nature and cause of the accusation against him, La. Const. of 1974, Art. 1, Section 13, which contemplates that the indictment state the essential facts constituting the offense charged, unless an authorized short-form indictment is used whereby the essential facts may be ascertained by a motion for a bill of particulars. La.C.Cr.P. art. 464 and commentary; State v. Edwards, 287 So.2d 518 (La. 1973). See also State v. Clark, 288 So.2d 612 (La.1974). "It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." Jackson v. Virginia, ___ U.S. ___, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979).
[3] The defendant's testimony, substantially corroborated by most witnesses, is that hotel accommodations were secured for agents and prospective clients of his corporation, the National Answering Service Corporation.
[4] The defense testimony is that the account was allowed to run up pursuant to an agreement for a trade-out arrangement for the services furnished the hotel against those to be furnished by the defendant's corporation (which however became defunct before it could perform them). These witnesses further testified that the $3,300 check was given as a "hold" check (i. e., for security), with the explicit understanding that there were insufficient funds presently in the bank to pay it.