426 So.2d 249 (1983)
STATE of Louisiana
v.
George RUPLE.
No. 82 KA 0679.
Court of Appeal of Louisiana, First Circuit.
January 5, 1983.
*250 Ossie B. Brown, Dist. Atty. by Glen R. Petersen, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
John R. Dowden, Baton Rouge, for defendant-appellant.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
The defendant, George Ruple, was convicted by a jury of indecent behavior with a juvenile, in violation of La.R.S. 14:81. He was sentenced to serve four years at hard labor in the custody of the Louisiana Department of Corrections, which sentence was suspended and he was placed on supervised probation for a period of five years subject to various conditions (most of which are set forth in La.C.Cr.P. art. 895), including requirements that he be evaluated at the Baton Rouge Mental Health Center and serve twenty-six consecutive Sundays on the East Baton Rouge Sheriff's litter detail.

SPECIFICATION OF ERROR NO. 1 SUFFICIENCY OF THE EVIDENCE
In State v. Mathews, 375 So.2d 1165 (La.1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The Louisiana Supreme Court has indicated that this appellate review of the evidence by a state court is required by the due process clause of the Fourteenth Amendment of the United States Constitution. State v. Graham, 422 So.2d 123 (La.1982). When reviewing a conviction based upon circumstantial evidence, it must be determined that, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. La.R.S. 15:438; State v. Ennis, 414 So.2d 661 (La.1982); State v. Austin, 399 So.2d 158 (La.1981).
*251 The crime of indecent behavior with a juvenile is defined in La.R.S. 14:81, as follows:
"Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense."
The elements of the offense as charged in this case are: (1) the defendant is a person over the age of seventeen; (2) the juvenile is a person under the age of seventeen; (3) there is an age difference greater than two years between the defendant and the juvenile; (4) the defendant committed a lewd or lascivious act upon the person of the juvenile; and (5) the act committed by the defendant was with the intention of arousing or gratifying the sexual desires of either person.
The record shows that the defendant was born on December 25, 1950, and the juvenile was born on May 5, 1965. The incident which resulted in the charge occurred on June 23, 1980. At that time, the defendant was over seventeen (age 29), the juvenile was under seventeen (age 15), and there was an age difference greater than two years between the defendant and the juvenile.
The evidence most favorable to the prosecution in the record is the testimony of the juvenile, in pertinent part, as follows:
"A. and so then I went back into the kitchen and sat down, and so he was a minute coming back in there, and so he had two cans of worms on the table. Some of themone can was completely dead and another can he must have just bought. I don't know.
"Q. Thisthese are live worms?
"A. Yeah.
"Q. Like for fishing bait or what?
"A. Yeah.
"Q. Okay.
"A. So I commented on how big they were, and hehe compared them. In his own words he said those thingslet's seehe said they were big. Then he said that they weren't nearly as big as his dick
"Q. Okay.
"A. in his own words.
"Q. All right, what happened after that?
"A. Okay, then he said, `Speaking of dicks, let's see how big yours is'. Then he reached over. While he was doing that, hehe asked where it isin hibernation, and then he asked if I was having a hard on.
"Q. Okay. Did he ever touch you?
"A. Yes.
"Q. Where did he touch you?
"A. Between my legs.
"Q. Okay. Whatwhat did you do at that point?
"A. I got up and left.
....
"Q. As silly as this sounds, was his touching without your consent?
"A. Yes.
"Q. Did he touch your genitals?
"A. Yes."[1]
The juvenile's testimony shows that the defendant touched the juvenile on his genitals (apparently through his clothing) without his consent. This is sufficient evidence to show that the defendant committed a lewd and lascivious act upon the person of the juvenile.
Indecent behavior with a juvenile is a specific intent crime. Specific intent is a state of mind in which "the offender actively desired the prescribed criminal consequences to follow his act or failure to *252 act." In order to have an indecent behavior, the state must prove that the lewd or lascivious act upon the juvenile was "with the intention of arousing or gratifying the sexual desires of either person." La.R.S. 14:10 and 11; State v. Duncan, 390 So.2d 859 (La.1980); State v. Johnson, 368 So.2d 719 (La.1979); State v. Fontenot, 256 La. 12, 235 So.2d 75 (1970). Although a specific intent may be proven by direct evidence, such as by statements of the defendant, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981); State v. Williams, 383 So.2d 369 (La.1980). The testimony of the juvenile indicates that the defendant asked him how big his penis was, reached over and touched him on his genitals, and asked if he were having an erection. This evidence shows both directly and circumstantially that the defendant had the specific intent of arousing or gratifying the sexual desires of himself and the juvenile. From this evidence, the jury could validly conclude beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded and that the defendant had the requisite specific intent to commit the offense.
Assignment of error number 1 is without merit.

ASSIGNMENT OF ERROR NO. 2EXCESSIVENESS OF SENTENCE
A majority of the Louisiana Supreme Court has held that Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment, and that although a sentence may be within statutory limits, it may violate a defendant's Constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). A trial judge's reasons for sentence, as required by Article 894.1, are an important aid to an appellate court when called upon to review a sentence complained of as excessive. However, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La. 1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979).
The record reflects that the trial court did not adequately consider the 894.1 guidelines in particularizing the sentence of the defendant.[2]State v. Vaughn, 378 So.2d 905 (La.1979); State v. Franks, 373 So.2d 1307 (La.1979). However, where a sentence imposed is not "apparently severe" and is in the "lower range" of the sentencing scale, this court will not remand for compliance with Article 894.1. State v. Jones, 412 So.2d 1051 (La.1982); State v. Bowick, 403 So.2d 673 (La.1981); State v. Day, 391 So.2d 1147 (La.1980).
The maximum authorized sentence for indecent behavior with a juvenile is a fine not more than $5,000 or imprisonment with or without hard labor for not more than five years or both. The sentence actually imposed does not assess a fine. The sentence does provide for four years in the custody of the Department of Corrections, but this portion of the sentence is suspended. The probation imposed is for the maximum length of time authorized (La.C.Cr.P. art. 893) and is subject to the standard conditions of probation contained in La.C. Cr.P. art. 895. The two special conditions imposed, requiring evaluation at the Mental Health Clinic and twenty-six consecutive Sundays on the litter detail, are reasonable in view of the nature of the offense and its gravity. Because the sentence to confinement in this case was suspended, it is not apparently severe and the sentence as imposed is not an abuse of the much discretion granted to a trial judge.
Assignment of error number 2 is without merit.

*253 DECREE
The defendant's conviction and sentence are affirmed.
AFFIRMED.
APPENDIX NO. 1
"In pronouncing this sentence and in accordance with the provisions of Article 894.1 of the Louisiana Code of Criminal Procedure, the court cites that probation is appropriate because the defendant has no history of convictions for criminal activity before the commission of the instant crime, and the court cites the accused's lack of criminal record as presented to the court by the Division of Probation and Parole. Also the defendant is likely to respond affirmatively to probationary treatment, and the court cites that the accused has a rather extensive formal education including off and on attendance at LSU for a period of five years. The court also notes that the Division of Probation and Parole recommends probation in this case."
COVINGTON, LANIER and ALFORD, JJ., specially concurring.
LANIER, Judge.
We concur in the result reached in this case but do not adhere to the proposition that this court has jurisdiction to review facts in criminal cases.
On January 13, 1973, the third day of the Louisiana Constitutional Convention of 1973, Rule 22B was adopted which required that the Secretary of the Convention "keep a verbatim record and a sound recording of all sessions of the Convention...." Volume I, Records of the Louisiana Constitutional Convention of 1973: Journal of Proceedings, page 26. The debate on Rule 22 may be found in Volume V, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts at pages 67 to 73. A review of the debates shows that the large majority of delegates felt that a verbatim transcript was necessary for the courts of Louisiana to properly interpret the meaning and intent of the framers of our new Constitution. At page 68 of the debate Delegate Stagg, Chairman of the Rules Committee, observed in pertinent part as follows:
"One of those points of view was that as you know, when questions of Constitutional law and rights are concerned the Courts pay attention to legislative history of the formation of the Constitutional Document.
....
"There was no counterview to the fact that it was of historical and legal significance to have the proceedings of the convention in a form of a written record and that is now reflected in the language of Subparagraph B."
On page 69 of the debate, Delegate DeBlieux observed as follows:
"But I can say this, probably if we had a written record, verbatim record of the Convention of the states in the year of 1787, we probably could have saved a lot of expenses as it has taken the Supreme Court to interpret what that Constitution meant. I hope that we won't have as many court decisions trying to find out what we meant because of the documents we adopted. I think this can be very helpful in that extent."
Also on page 69 of the debate, Delegate Jenkins observed as follows:
"But the importance is that it would provide hopefully for generations to come with the spirit and feeling of what we're doing at this Convention. The few words that we're putting down in the document only tell part of the story. I don't care how precise you are in writing something; it can be interpreted in many ways. And what is said in the debate on this floornot in things like rules, but when we get to the substance of this conventioncan be all important in future court decisions. It can mean, literally, millions of dollars in the long run in court decisions compared to probably a few thousand spent in this Convention and, more important, not simply from dollars and cents but from the standpoint for the rights and liberties of our people.

*254 It could mean all of those things. Now, keeping a transcript is not uncommon. Most Constitutional Conventions do."
On page 70 of the debate, Delegate Arnette observed as follows:
"Now the second thing is, it's very necessary for the future use in law suit purposes for interpretation of the Constitution. I'm sure everyone understands this is a very important point to consider."
And at page 71 of the debate, Delegate Duval observed as follows:
"I think that the proceedings of the Convention are of enough historical significance to justify keeping a record. There are other good reasons, particularly dealing with questions before the Supreme Court of Constitutional interpretation."
In New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402 (La.1982), the Louisiana Supreme Court observed that the proceedings of the Louisiana Constitutional Convention of 1973 "... are valuable aids, and should be given some weight, in determining the purpose, intent, and consequent meaning of provisions for those who find them doubtful."[1] On numerous occasions, the Louisiana Supreme Court has referred to convention records to determine the meaning and intent of constitutional provisions. State, Department of Highways v. Constant, 369 So.2d 699 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979); Succession of Robins, 349 So.2d 276 (La.1977); State v. Bryant, 324 So.2d 389 (La.1975); Hainkel v. Henry, 313 So.2d 577 (La.1975).
Article 5, Section 5(C) of the Louisiana Constitution of 1974 establishes the scope of appellate review of the Louisiana Supreme Court as follows:
"Except as otherwise provided by this constitution, the jurisdiction of the supreme court in civil cases extends to both law and facts. In criminal matters, its appellate jurisdiction extends only to questions of law."
(Emphasis added).
When the criminal appellate jurisdiction was transferred to the Courts of Appeal in 1980 (effective July 1, 1982), this same constitutional prohibition against review of facts in criminal cases was included in Article 5, Section 10(B) as follows:
"Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In criminal cases its appellate jurisdiction extends only to questions of law."
(Emphasis added).[2]
In explaining the constitutional prohibition against appellate review of facts in criminal cases at the Louisiana Constitutional Convention of 1973, the chairman of the Judiciary Committee observed that "[I]n criminal matters however the appellate jurisdiction is restricted to questions of law. This also is the present law in our Constitution and is continued without substance." Volume VI, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, page 721 on August 15, 1973. Some of the reasons for this rule were explained by Delegate (then Justice) Tate as follows:
"Ms. Zervigon Judge Tate, you were on this committee. Did you all consider extending review of the facts to criminal cases?
"Mr. Tate That is another question. I don't think we seriously did. I think someone proposed it. I don't think it carried with a second. But that's another question. I understand there is another amendment coming up on it.
"Ms. Zervigon Do you have any idea why serious consideration wasn't given to review the facts on criminal cases?

*255 "Mr. Tate Well, that requires an awful long answer. The reason possibly is, tradition, the fact that we inherited that law from the Anglo-Saxon which traditionally limits review in criminal cases to law. The fact that as a matter of administration of justice, many times people were afraid that, for instance, an appeal on facts in criminal cases might involve, although I don't think it would, the district attorney being able to appeal the question of acquittal and things like that. I'm not giving you a completely square answer because it's very complicated the question you asked why there shouldn't be a review of facts in criminal cases. But for the administration of criminal justice, it's generally felt that .... that has just not been extended.
"Mr. Perez Judge, isn't it a fact that one of the reasons that you do not review the facts in criminal cases because a criminal case is always tried before a jury whereas most civil cases are tried before a judge without a jury.
"Mr. Tate That is a very good partial answer. Of course I think in misdemeanor cases, we only review law. But in the vast majority of cases that is true."
Volume VI, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, pages 728 and 729 on August 15, 1973.
By an express constitutional mandate, this court has no jurisdiction to review questions of fact in criminal cases. The Louisiana Supreme Court has consistently held in determining criminal appellate jurisdiction that where there is no evidence of an essential element of a crime, a question of law is presented that can be reviewed. Where there is some evidence of an essential element of a crime a question of the sufficiency of the evidence is presented which is an issue of fact over which there is no jurisdiction. State v. Marcal, 388 So.2d 656 (La.1980); State v. Williams, 383 So.2d 369 (La.1980); State v. Hudson, 373 So.2d 1294 (La.1979); State v. Victor, 368 So.2d 711 (La.1979); State v. Rollins, 351 So.2d 470 (La.1977); and State v. Madison, 345 So.2d 485 (La.1977). This jurisprudence was the law governing what was a question of law and a question of fact for determining jurisdiction at the time that the Louisiana Constitution of 1974 was adopted. As indicated by the convention discussion of this concept, this law was continued without substantive change. This jurisprudence has not been expressly overruled. Indeed, to do so would effect a substantial amendment to the Louisiana Constitution without a vote of the people as is required by Article 13 of the Constitution.[3]
In State v. Graham, 422 So.2d 123 (La. 1982), (at page 6 of the opinion), the Louisiana Supreme Court held as follows:
"The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)."
(Emphasis added).
The foundation case for this line of jurisprudence is State v. Mathews, 375 So.2d 1165 (La.1979). In Mathews at page 1168 of the Southern Reporter appears the following:
"Thus, in Jackson, the United States Supreme Court held that due process requirements of the federal constitution are offended by a lesser standard of review than that enunciated by it. Although the issue arose in terms of federal habeas review, the Jackson holding also applies, inferentially, to state or federal direct review, where due process would be equally offended by a lesser standard." *256 Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) came from a State where there is no appeal as of right from a criminal conviction. See Jackson v. Virginia, supra, 99 S.Ct. at page 2785 of the Supreme Court Reporter. Jackson was found guilty by a trial judge and took a writ to the Virginia Supreme Court which was denied. The United States Supreme Court did not comment on the constitutionality of the Virginia criminal appellate review scheme, and, obviously, made no comment about the constitutionality of the Louisiana criminal appellate review scheme. The specific holding of Jackson v. Virginia is found 99 S.Ct. at page 2792 of the Supreme Court Reporter as follows:
"We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254if the settled procedural prerequisites for such a claim have otherwise been satisfiedthe applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."
We do not agree that Jackson v. Virginia mandates that state appellate courts or Louisiana appellate courts must have jurisdiction to review facts (sufficiency of evidence as opposed to absence of evidence) in criminal cases.[4] Federal appellate due process does not require any appellate review. United States v. MacCollom, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976); Estelle v. Dorrough, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Rheuark v. Shaw, 628 F.2d 297 (5th Cir.1980); Joensen v. Wainwright, 615 F.2d 1077 (5th Cir.1980); Martin v. Blackburn, 521 F.Supp. 685 (E.D. La.1981); and State v. Fletcher, 341 So.2d 340 (La.1976). As long as the appellate procedures granted by a state are indiscriminately available to all persons convicted, a state may limit appeals on its own terms. State v. Bernos, 260 La. 1108, 258 So.2d 371 (La.1972); 16A C.J.S. Constitutional Law § 594 at pages 688-691. Thus, in State v. Petterway, 403 So.2d 1157, 1161 (La.1981), the court observed:
"Furthermore federal due process does not require a state in criminal cases or otherwise to provide an appellate system. Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973). Due process only requires that such procedural rights, including appeal, as are instituted by law, be indiscriminately afforded each person attempting to exercise same. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).
If federal due process does not require a state appellate system, how can federal due process require appellate review of facts? If a state appellate system indiscriminately affords each person using it only an appellate review of law, how is federal due process violated? Is the scope of appellate review in criminal cases provided for in Article 5, Sections 5(C) and 10(B) of the Louisiana Constitution unconstitutional under federal due process because it limits jurisdiction to questions of law? We have not found any federal jurisprudence that specifically addresses or answers these questions.
We believe that the view expressed by Chief Justice Summers in his dissent in Mathews is correct. If it is determined that appellate courts in Louisiana should have jurisdiction to review the sufficiency of evidence (facts) in criminal cases for the proper *257 administration of justice, a constitutional amendment should be submitted to the people to achieve that goal. The meaning and effect of the above constitutional provisions should not be changed jurisprudentially by inference, but only when there is a definitive judgment from the United States Supreme Court declaring that the Louisiana Constitutional scheme for the appellate review of criminal matters fails to meet federal constitutional due process muster. If federal courts wish to review the sufficiency of the evidence (facts) of all criminal convictions in state courts, that is their prerogative.
NOTES
[1] The testimony of the defendant repudiates that of the juvenile and gives a different version of the facts. The jury's verdict indicates that it accepted the testimony of the juvenile and rejected that of the defendant.
[2] See extract of transcript attached as Appendix No. 1.
[1] In Bank of New Orleans and Trust Company v. Seavey, 383 So.2d 354 (La. 1980), the court observed that when a constitutional provision is plain and unambiguous, its language must be given effect and should be applied according to the most usual signification in which the words are generally understood.
[2] The only difference between the two provisions is that Article 5, Section 5, refers to criminal "matters" and has a comma after that word whereas Article 5, Section 10, refers to criminal "cases" and does not have the comma.
[3] If reviewing the evidence (facts) to determine if it is sufficient to establish proof of each essential element beyond a reasonable doubt is a question of law, what then would constitute a question of fact?
[4] We do agree that Jackson v. Virginia, supra, mandates that when a court, trial or appellate, has jurisdiction to review the sufficiency of evidence (facts) in a criminal case, the standard to be followed is that set forth in that opinion. For example, trial judges in Louisiana have jurisdiction to review the facts of a case when a motion for a new trial is made on the grounds that the verdict is contrary to the evidence (LSA-C.Cr.P. art. 851[1]) or when there is a motion for a judgment of acquittal in a trial before a judge alone. (LSA-C.Cr.P. art. 778). If the trial judge finds that insufficient evidence has been presented to satisfy the Jackson v. Virginia standard, a judgment of acquittal or an order for a new trial, as appropriate, can be entered. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).