434 So.2d 1315 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Freeman GATSON, Defendant-Appellant.
No. CR82-719.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*1316 Shelby E. Bohannon, Alexandria, for defendant-appellant.
Ed E. Roberts, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY, and YELVERTON, JJ.
*1317 DOMENGEAUX, Judge.[*]
Defendant, Freeman Gatson, was indicted by the Rapides Parish Grand Jury on one count of forcible rape, a violation of La.R.S. 14:42.1.[1] Subsequent to his plea of not guilty, defendant was tried by a jury of twelve, who returned a verdict of guilty as charged. The trial court sentenced defendant to twenty years at hard labor, ten years of which were to be without benefit of probation, parole, or suspension of sentence. Defendant thereafter perfected this appeal.
The facts of this case are as follows: On February 17, 1982, during the late afternoon, the 15 year old victim[2] and a male friend of hers had gone to a local grocery store to make some food purchases. Upon leaving the store, the victim and her companion were confronted by three males, one of whom was the present defendant. The victim was then forcibly abducted by the three males, and the defendant told her that he had a knife which he would not hesitate to use if she resisted. The male companion, who was afraid to challenge the three men, fled to the Alexandria Police Department for assistance.
Officer Sherman King was on patrol when at approximately 4:30 p.m. he received a police report that a young girl had been abducted, but when he investigated the reported area of the crime, he found no one. During this time, the victim had been taken to a deserted house where her clothes were taken off by two of her attackers, and she was raped by the defendant and forced to perform oral sex upon her other two assailants. Meanwhile, the victim's male companion, joined by her 12 year old brother, were searching for the assailants and the victim, when two friends told them to check in the vicinity of the deserted house. When the two boys shouted into the house that the police were coming, the three assailants hastily retreated from the scene of the crime. The victim then exited from the house crying and "pulling up her clothes on".
Between 6 o'clock and 7 o'clock on that fateful evening, Officer King was told that the abducted girl had reported to the police station. At the stationhouse, the victim told the officer that she had been "molested", but she denied several times that she had been raped. At the trial, the officer testified that personally, he had been unsatisfied with the victim's answers and that she seemed reluctant to speak about the attack.
After the victim returned home that night, she told her father that she had, in fact, been raped. He told the girl to be truthful and to report the crime to the police the next day. The next morning, the father accompanied his daughter back to the police station, where she admitted that she had been sexually attacked by her three abductors the previous evening. While the young girl was able to identify the two attackers who had forced her to perform oral sex on them by picking their pictures out of a mug book, in seeking to identify the present defendant, she picked from the mug book the picture of another individual. The victim had earlier known the two assailants whom she correctly identified, but she had never before seen the defendant.
Subsequent to the investigation of the crime, defendant was charged with the rape of the victim. At the trial, both she and her male friend identified the defendant as being the third assailant. Defendant presented no evidence on his behalf, and *1318 was found guilty as charged on one count of forcible rape.
Upon this appeal, defendant has presented for review six assignments of error. Since we find that the first three assignments of error are merely restatements of the same argument, we have consolidated them herein. The errors alleged to have been committed are as follows:
(1) Under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there was insufficient evidence to have convicted the defendant;
(2) The trial court erred in allowing the State to introduce into evidence the age of the victim, as this unduly prejudiced the defendant;
(3) The trial court erred in refusing to allow the defendant to question a State's witness as to the victim's reputation for chastity, after the State had previously put the victim's consent at issue; and
(4) A "manifest error" was committed when the prosecutor made several remarks in his closing argument which, allegedly, implied that the jury would personally suffer the consequences of a "not guilty" verdict.

ERROR NO. 1
By this assignment, the defendant alleges that the State failed in meeting its burden of proof inasmuch as there was insufficient evidence upon which to convict him of the crime of forcible rape. In support of this argument, the defendant cites the standard for review of facts in criminal cases initially enunciated by the United States Supreme Court in Jackson v. Virginia, supra. In that case, the Court stated:
"Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
The Louisiana Constitution in Article V, Section 5(C) and 10(B), specifically provides that in criminal matters, "... appellate jurisdiction extends only to questions of law." (Emphasis added). In spite of these constitutional provisions, however, our own Supreme Court promptly recognized the Jackson standard in State v. Mathews, 375 So.2d 1165 (La.1979), and State v. Abercrombie, 375 So.2d 1170 (La.1979).[3]
It is well established that the prosecution must prove every element of the crime charged beyond a reasonable doubt. La.R.S. 15:271; State v. Prestridge, 399 So.2d 564 (La.1981). The elements of the crime of forcible rape are set forth as follows: (1) there must have been an act of anal or vaginal sexual intercourse, (2) committed by a person who is not the spouse of the victim, (3) without the victim's lawful consent, and (4) the victim was prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believed that resistance would not prevent the rape. La. R.S. 14:41, 14:42.1.
We shall address respectively the evidence supporting each element of the crime previously set forth:
ELEMENT NO. 1: The victim testified that her clothes were taken off by two of her assailants and that the defendant inserted his penis into her vagina. She further testified that the rape lasted approximately thirty minutes. The victim's father and her friend both testified without objection *1319 that the victim had told them shortly after the incident that she had been raped. Additionally, an examination of the victim on February 18th indicated that she had had intercourse within the last forty-eight hours. No testimony was presented by the defendant to refute the victim's claim that he had raped her.
That the victim had initially denied to the police that she had been raped does not negate her admission to the officers the next day that she had been raped the evening before, since her initial denial would appear not to be inconsistent with the expected actions of a 15 year old girl, who had gone through a traumatic and humiliating experience. This conclusion is buttressed by the fact that the officer who questioned the victim shortly after the rape testified that he had doubted her denials that she had been raped.
ELEMENT NO. 2: The victim testified that she was not married to the defendant. No evidence refuting this was presented.
ELEMENT NO. 3: The victim testified that she had not consented, but that she had resisted and that she had tried to run away. This was corroborated by a witness who had seen the victim being led away crying by three men. That witness also heard the victim say that she wanted to go home.
ELEMENT NO. 4: Although the victim admitted that she had never seen a knife, she testified that the defendant said that he had a knife and that he would use it on her if she resisted. Her friend and the other witness to the abduction each testified that the young girl had been forcibly held by the three men as she was led away by them.
Defendant requests that an unwarranted amount of weight be given to the observation that the young rape victim's testimony was slightly confused at several points. We note that she was somewhat inconsistent in some of her answers, but we do not find this indicative of unreliability. Rather the answers are not inconsistent with those expected from a person with a limited educational background who is the victim of an embarrasing, violent sex crime.[4] We further note that it is not the function of the appellate court to substitute its subjective belief as to the weight merited by a witness' testimony, as this decision is the sole domain of the factfinder, which in the instant case was the jury of twelve. State v. Wright, 410 So.2d 1092 (La.1982).
While we note that the victim, looking at mugshots the day after the rape, identified the wrong man as being the defendant, she positively identified the defendant at trial as being the man who raped her. This identification was supported by that of a friend who both saw and spoke with the defendant. In State v. Wright, supra, the Court was faced with a similar situation involving a physical lineup. In that opinion, the Court stated:
"It is established in the jurisprudence of this State that a witness' failure to identify an accused at a pretrial line-up does not render a later in-court identification inadmissible, and that failure to identify a suspect at a pretrial line-up is a matter which addresses itself to the weight of a witness' testimony rather than its admissibility."
We find that the evidence, viewed in a light most favorable to the prosecution, was sufficient to have convinced any rational factfinder, beyond a reasonable doubt, that the defendant was guilty of committing the crime of forcible rape. The State has, therefore, met its required burden of proof on each element, and this assignment of error is without merit.

ERROR NO. 2
Defendant alleges that the trial court committed reversible error in allowing the victim to testify as to her age, as this was irrelevant and unduly prejudiced the defendant. No support is cited by the defendant for this proposition.
We find no merit in the defendant's argument. The trial court's ruling *1320 concerning the relevancy of certain evidence is not to be disturbed in the absence of a showing of a clear abuse of its discretion. State v. Kimble, 407 So.2d 693 (La. 1981). The State argued that the age of the victim was relevant inasmuch as the jury had to determine the questions of consent and resistance, and the victim's age would aid in the determination of what actions would be expected from that individual. The trial judge held that the victim's age was relevant. La.R.S. 15:441. We agree.
Additionally, we observe that the defendant has failed to make any showing of prejudice. In the absence of such a showing, any error that may have occurred is harmless. State v. Johnson, 343 So.2d 155 (La.1977).

ERROR NO. 3
Defendant argues that it was error for the trial court to have prevented him from cross-examining a State's witness regarding the victim's reputation concerning permissiveness and chastity, after the State had initially put the question of consent at issue. The applicable statute is La.R.S. 15:498, the so-called "rape shield" statute, which limits the admissibility of evidence of the victim's chastity to incidents arising from the victim's relationship with the accused.
In the instant situation, defense counsel attempted to elicit from the victim's friend his knowledge of her general reputation for chastity. This action is clearly prohibited by La.R.S. 15:498 and the jurisprudence. State v. Decuir, 364 So.2d 946 (La.1978); State v. Domangue, 350 So.2d 599 (La.1977).
However, the defendant maintains that the State's introduction of the issue of consent allowed him to contravene the prohibition of La.R.S. 15:498. This is a nonsequitur. Lack of lawful consent on the part of the victim is an essential element of the crime of rape which the State had to necessarily prove in order to have the defendant convicted of forcible rape. La.R.S. 14:41, 14:42.1. This burden of proving the victim's lack of consent was extant at the time of the enactment of the rape shield statute by Act 732 of 1975, and was not legislatively amended by that Act.
Additionally, the defendant argues that La.R.S. 15:498 is excessively broad and is effectively limited and clarified by jurisprudence which existed prior to the enactment of that statute. We find precisely the reverse to be true, particularly in light of jurisprudence subsequent to the enactment of the rape shield statute. In particular, see State v. Domangue, supra, in which the Supreme Court expressly rejected this line of argumentation.
Finally, the defendant claims that his constitutional rights have been violated, particularly with regard to his right to introduce relevant exculpatory evidence on his own behalf and his right of confrontation. However, we are unpersuaded by this argument. The defendant has made no showing that the victim's reputation for chastity was of any particular relevance and necessary to insure him a fair trial. Whatever the victim's prior sexual history may have been, it had no bearing on the issue of her consent in the incident at issue herein. Thus, there was no violation of the defendant's rights by the exclusion of this essentially irrelevant testimony. State v. Dawson, 392 So.2d 445 (La.1980).

ERROR NO. 4
By this assignment, defendant alleges that a "manifest error" was created when the prosecutor made certain remarks in his closing arguments which purportedly prejudiced the defendant. The contention is made that the remarks implied that the jurors would suffer personal consequences if they returned a not guilty verdict.
However, no contemporaneous objection was made by defense counsel to these remarks. Thus, the alleged error cannot be availed of on appeal of this matter since it was not objected to at the time of the occurrence, La.C.Cr.P. Art. 841, and is not discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La.C.Cr.P. Art. *1321 920; State v. Thomas, 427 So.2d 428 (on rehearing, La.1983). Furthermore, our statutory law does not contain an exception to the contemporaneous objection rule which allows appellate review of the record of a criminal case for "manifest" or "plain" error. Thomas, supra. Thus, this assignment of error is without merit.
For the above and foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.
DOMENGEAUX, Judge, concurring.
We concluded in the majority opinion on one of the issues, that under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence, when viewed in a light most favorable to the prosecution, was sufficient to have convinced any rational factfinder beyond a reasonable doubt, that the defendant was guilty of committing forcible rape. Nevertheless, I feel that it is necessary for me to file this concurring opinion in order to express my own views concerning the applicability of the "sufficiency of evidence" standard to our state criminal appellate system. In this regard, I am in complete agreement with the views contained in the concurring opinions recently propounded by my Brethren of the First Circuit Court of Appeal in State v. Ruple, 426 So.2d 249 (La.App. 1st Cir.1983), and in State v. Arnold Oliney, 430 So.2d 1294 (La. App. 1st Cir.1983).
In Ruple, Judge Lanier, joined by Judges Covington and Alford, in a brilliant and eloquent concurring opinion, respectfully challenged the decisions of our Supreme Court in State v. Mathews, 375 So.2d 1165 (La.1979) and its progeny which chose to inculcate the theme of Jackson v. Virginia to our state appellate process, thus allowing it to infiltrate our state criminal justice system. Specifically, the concurring opinion in Ruple challenged the holding of Mathews on the basis that it evaded the express provisions of Article 5, Section 5(C), and Article 5, Section 10(B) of the Louisiana Constitution of 1974. In this regard, the Judges of the First Circuit stated:
"If it is determined that appellace courts in Louisiana should have jurisdiction to review the sufficiency of evidence (facts) in criminal cases for the proper administration of justice, a constitutional amendment should be submitted to the people to achieve that goal. The meaning and effect of the above constitutional provisions should not be changed jurisprudentially by inference, but only when there is a definitive judgment from the United States Supreme Court declaring that the Louisiana Constitutional scheme for the appellate review of criminal matters fails to meet federal constitutional due process muster. If federal courts wish to review the sufficiency of the evidence (facts) of all criminal convictions in state courts, that is their prerogative."
The Louisiana Constitution of 1974 unquestionably forbids the extension of appellate jurisdiction by either the Supreme Court or the Courts of Appeal to questions of fact in criminal cases. The language of the Constitution could not be any clearer or more emphatic in this regard. Article 5, Section 5(C) expressly mandates in reference to the appellate jurisdiction of the Supreme Court in criminal cases:
"In criminal matters, its appellate jurisdiction extends only to questions of law."
Furthermore, Article 5, Section 10(B), dictates with regard to the appellate criminal jurisdiction of the Courts of Appeal:
"In criminal cases its appellate jurisdiction extends only to questions of law."
In State v. Mathews however, I respectfully submit that our Supreme Court elected simply to utilize the ruling of the U.S. Supreme Court in Jackson v. Virginia, rather than to address the provisions of our Constitution, supra, which clearly contradict its position. Specifically, the majority stated:
"Thus, in Jackson, the United States Supreme Court held that due process requirements of the federal constitution are offended by a lesser standard of review than that enunciated by it. Although the issue arose in terms of federal habeas *1322 review, the Jackson holding also applies, inferentially, to state or federal direct review, where due process would be equally offended by a lesser standard."
It is quite interesting to note that the Mathews decision was rendered by our Supreme Court on September 4, 1979, nearly a year prior to the publication of Act 843 of 1980 which proposed to amend Article 5, Section 10(B) of the Louisiana Constitution to its present form, and nearly three years prior to the effective date of that Act, July 1, 1982.[1] Had the Legislature felt strongly about allowing the Courts of Appeal to review questions of fact in criminal cases, as per Mathews, then it is only logical that it would have simply passed a version of Act 843 which would have allowed for such appellate review. Arguably, the decision of the Legislature to pass Act 843 in the form in which it was ultimately approved by the public could be viewed as an express reprobation of the rationale of Mathews and its predecessors by the Legislature and the voting community.
Additionally, I find it noteworthy that subsequent to Mathews, our Supreme Court opted to revert back to the inveterate "no evidence" standard of review in two different decisions, rather than resort to the novel "sufficiency of evidence" paradigm. In State v. Williams, 383 So.2d 369 (La.1980), (see footnote 3 of the majority opinion herein), Justice Blanche, writing on behalf of the majority of the Court, specifically acknowledged the reality that the Louisiana Constitution explicitly limits the review of criminal convictions on appeal to questions of law. While Justice Blanche was able to uphold the district court's finding of fact in Williams irrespective of the standard of review applied (see the sentence asterisked at the bottom of page 373 of the opinion), he nevertheless averred within the context of the opinion that only when there is no evidence of an essential element of the crime charged can that Court's appellate jurisdiction be invoked to reverse a conviction on evidentiary grounds.
Justice Blanche also authored the majority opinion in State v. Marcal, 388 So.2d 656 (La.1980), in which he further averred:
"On appeal, this Court's jurisdiction is limited to questions of law; therefore, if there is some evidence proving the essential elements of the crime, no question of law is presented, sufficiency of the evidence being a matter to be decided by the trier of fact. State v. Victor, 368 So.2d 711 (La.1979); State v. Madison, 345 So.2d 485 (La.1977). It follows that on review of a denial of a motion for a new trial, this Court will not review the sufficiency of the evidence presented to the trial court but will simply determine if there is some evidence of each element."
Justices Dennis and Calogero concurred in the Marcal decision, but challenged the standard of review employed by Justice Blanche in light of Jackson. In questioning Justice Blanche's holding, however, neither of the concurring Justices chose to address the provisions of our Constitution which forbid appellate review of questions of fact in criminal cases.
Notwithstanding the above, however, I respectfully suggest that the time has now come for our Supreme Court to re-evaluate the Mathews decision in light of its inessential excursion into the realm of constitutional rule-making. We cite the articulate concurring opinion of Justice John Paul Stevens of the United States Supreme Court in Jackson v. Virginia in which he made the following comments concerning the expediency of that Court's exercise of such lawmaking authority:
"Without entering the debate over the legitimacy of this justification for judicial action, it is at least certain that it should not be the basis for dramaticindeed, for anyconstitutional lawmaking efforts unless (1) those efforts are necessary to the decision of the case at hand and (2) powerful reasons favor a change in the law. See Ashwander v. TVA, 297 U.S. 288, 345-348, 56 S.Ct. 466, 482-483, 80 L.Ed. 688 (Brandeis, J., concurring)."
An application of the above criteria to the Mathews case reveals the frailties that *1323 are inherent in that decision. In the first place, it is evident from Justice Tate's opinion in Mathews that the case could have been resolved by application of the long-standing, jurisprudential "no evidence" standard, without the necessity of applying the Jackson "sufficiency of evidence" rule. Justice Tate readily acknowledged this in the context of his opinion:
"Under either standard of review, in the present case there is a total lack of evidence by which the trier of fact could have reasonably found beyond a reasonable doubt that credit had not been extended to the defendant Mathews at the time he secured accommodations for his firm at the LePavillon Hotel and subsequently. Thus, the evidence does not support his conviction." (Emphasis added).
Furthermore, contrary to Justice Tate's opinion, the Jackson case did not inferentially purport to apply the "sufficiency of evidence" standard to state criminal appeals. The express holding of the Court in Jackson applied specifically to federal habeas corpus proceedings, rather than to state criminal appellate review schemes, a fact conceded by Justice Tate in Mathews.
As was correctly pointed out in the concurring opinion in State v. Ruple, the Jackson case came from Virginia, a state in which there exists no appeal as of right from a criminal conviction. Jackson v. Virginia, supra, 99 S.Ct. at page 2785, footnote 4. Yet, the U.S. Supreme Court chose not to comment on the constitutionality of Virginia's appellate criminal scheme, limiting their holding to cases involving federal habeas corpus review. Since a defendant in Louisiana has a right of appeal to the Courts of Appeal in a criminal case triable by a jury (and has a right of appeal to the Supreme Court in a capital case in which the death penalty is imposed), La.C.Cr.P. Art. 912.1, as opposed to the Virginia appellate scheme, certainly it follows that Jackson cannot be viewed as a mandate that a state appellate court, much less a Louisiana appellate court, must have jurisdiction to evaluate the sufficiency of evidence in criminal cases. I respectfully suggest that any contrary interpretation of Jackson constitutes an unnecessary expansion of its holding.
I am in agreement with the dissenting view taken by Chief Justice Summers in Mathews, where he correctly concluded:
"The reliance on Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) to support the majority view is misplaced. That decision does not purport to invalidate Louisiana's constitutional limitation on review of facts by this Court in criminal cases. So deeply ingrained is the law's tradition of refusal to engage in after-the-fact review of jury deliberations, until the United States Supreme Court invalidates that concept in Louisiana's Constitution, I will adhere to the Louisiana Constitution."
In view of the deluge of criminal appeals now showering our appellate court dockets in which convicted individuals are being allowed to nefariously scourge the integrity of our criminal appellate process in an effort to circumvent the evidentiary findings of triers of fact, I feel that the propriety of our appellate courts to engage in "second-guessing" trial courts in criminal cases on questions of sufficiency of evidence is both misplaced and constitutionally unjustifiable. If the U.S. Supreme Court feels that federal courts should be governed by a different standard, then so be it.
NOTES
[*] For reasons stated therein the writer of this opinion has also filed a concurring opinion.
[1] La.R.S. 14:42.1 provides:

"Forcible rape is a rape committed where the annal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence."
[2] On the date of the trial, the victim was 16 years of age, but she was 15 when the offense was committed.
[3] While our Supreme Court has adhered to the Jackson standard in a long line of cases, there are at least two decisions which were rendered subsequent to Mathews and Abercrombie in which it seems to have retreated from its prior stance. In State v. Williams, 383 So.2d 369 (La.1980), handed down by the Supreme Court some eight months after Mathews and Abercrombie, Justice Blanche, writing for the majority, stated:

"The Louisiana Constitution limits this Court's review of criminal convictions on appeal to questions of law. La. Const. art. 5, § 5(C). Thus, only when there is no evidence of an essential element of the crime charged can this Court's appellate jurisdiction be invoked to reverse a conviction on an evidentiary review."
See also State v. Marcal, 388 So.2d 656 (La. 1980), in which Justice Blanche again held that sufficiency of the evidence is a matter to be decided by the trier of fact.
[4] This is perhaps best evidenced by the victim's admission that she did not know the meaning of the word "intercourse".
[1] This is the Act which shifted most criminal jurisdiction to the Louisiana Courts of Appeal.