454 So.2d 1297 (1984)
STATE of Louisiana, Appellee,
v.
Jerome BRYAN, Appellant.
No. CR 83-1004.
Court of Appeal of Louisiana, Third Circuit.
August 23, 1984.
Writ Denied October 12, 1984.
*1298 Max M. Morris, Lake Charles, for appellant.
Jerry G. Jones, Dist. Atty., Cameron, for appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
FORET, Judge.
The defendant, Jerome Bryan, was convicted of second degree murder, in violation of LSA-R.S. 14:30.1. Subsequently, he was sentenced to the mandatory term of life in prison at hard labor, without benefit of parole, probation, or suspension of sentence. He now appeals, alleging two assignments of error:
"(1) The trial court erred when it failed to sustain defendant's objection and motion for mistrial made to the method employed to purge the box of prospective jurors.
(2) The trial court erred when it failed to grant defendant's motion for a new trial in that the evidence presented a serious question of self-defense and, at the very least, negated the elements of second degree murder and, if anything, indicated that the defendant was guilty of manslaughter."

FACTS
In the early morning hours of February 22, 1983, the defendant, Jerome Bryan, was sitting at a table in the galley of the vessel, "Key Wester". Along with him in the galley were Jeff Thompson and Robert Lee Ross. The defendant had been working as a crew member of the "Key Wester" for about two weeks prior to the altercation at issue. The victim, Thompson, had been working on that same vessel for about nine months. Ross was a crew member of a sister vessel, the "Key Lady". The three had no prior history of altercations between them and all appeared to get along rather peacefully.
The three men had previously been out drinking in the Town of Cameron since the early afternoon of February 21. They continued this behavior in the galley, drinking shots of whiskey and chasing them down with beer. Suddenly, Thompson grabbed a large butcher knife and ordered the defendant and Ross into a corner. The defendant speculated that the victim's behavior was due to a comment that he and Ross had made about a certain girl. Ross felt that the victim was only "playing around". Nevertheless, Thompson began thrusting the knife at the men declaring that he was a "savage". Thompson kept the men in the corner for several minutes. The defendant then attempted to take the knife away from Thompson, and when he did, the defendant was slightly cut on the right *1299 hand. Immediately thereafter, Thompson exited the galley with the butcher knife still in his hand. Ross left the galley also.
About a minute later, Thompson reentered the galley. This time, however, the defendant had armed himself with a small knife used to cut fishing nets. A fight ensued, with Thompson being cut in the neck area. He subsequently bled to death.

ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendant contends that the Cameron Parish jury selection process was improper. The record shows that the defendant moved for a mistrial when the jury selection began. The Louisiana Code of Civil Procedure is clear that the proper vehicle for urging this objection is the motion to quash, not the motion for mistrial. LSA-C.Cr.P. Arts. 532 and 775. When this motion to quash is not urged prior to trial, any objection to the jury venire is waived. LSA-C.Cr.P. Art. 535, Official Revision Comment, Paragraph (c)(2).
Because a hearing on a motion to quash was never held, we have nothing in the record before us which would indicate that the defendant was somehow prejudiced by the jury selection process. Therefore, since the defendant waived his right to object to the jury venire, his objection was not properly preserved at the trial level and this assignment need not be reached.

ASSIGNMENT OF ERROR NO. 2
By this assignment[1], the defendant initially contends that the trial court erred in denying his motion for a new trial. From the record, we find that the defendant based his motion on the grounds that (1) the verdict was contrary to the law and evidence and (2) the ends of justice would be served thereby. LSA-C.Cr.P. Art. 851(1) and (5). Although some cases have indicated otherwise (see State v. Powell, 438 So.2d 1306 (La.App. 3 Cir.1983), writ denied, 443 So.2d 585 (La.1983)), when these grounds are urged as the basis for a new trial, nothing is presented for appellate review. LSA-C.Cr.P. Art. 858[2]; State v. Chapman, 438 So.2d 1319 (La.App. 3 Cir.1983).
Also by this assignment, the defendant contends that the evidence was insufficient to support his conviction of second degree murder. To reverse a trial court on insufficiency of evidence, the issue is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In the case at bar, the defendant claims that his actions were taken in self-defense. When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982). Consequently, defendant's first argument is that the evidence was insufficient to show that he did not act in self-defense.
LSA-R.S. 14:20 provides in part:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ..."
Thus, the issue is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could *1300 not have concluded that the state carried its burden of proving that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm and that his actions were not necessary to save himself from that danger.
Because there were no eyewitnesses to the second altercation between the defendant and the victim, it is difficult to determine exactly what happened when the two men met each other that second time. The evidence clearly shows, however, that the original altercation was provoked by the victim. Nevertheless, there is no evidence which tends to prove that the victim wished to continue fighting after he left the galley or that he was actually armed when he reentered the room. Even the defendant admitted on cross-examination that he was not sure if Thompson was still armed. In fact, the butcher knife used by the victim to back the defendant and Ross into a corner was never located.
In addition, the defendant received no injuries from the fight despite the fact that he was physically much smaller than the victim. Furthermore, there is some evidence which would indicate that the defendant could have left the galley after the original altercation and thus avoided any further confrontations with the victim. We conclude that a rational trier of fact could have concluded that the state carried its burden of proving that the defendant's actions were not taken in self-defense.
In the alternative, defendant argues that the evidence was insufficient to support his conviction of second degree murder because of the mitigating circumstances which surrounded his actions, and that only the lesser verdict of manslaughter could have been returned by the jury. LSA-R.S. 14:31(1) provides:
"Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or ..."
The existence of "sudden passion" and "heat of blood" are not elements of the offense, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Thompkins, 403 So.2d 644 (La.1981). Thus, our issue here is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that these mitigating circumstances were not present when the defendant killed the victim.
As was stated before, the evidence clearly shows that this entire incident was provoked by the victim. Robert Lee Ross, the only eyewitness to the original altercation, felt that Thompson was merely "playing around" when he backed the two men into the corner with a huge butcher knife. The defendant, however, had known the victim for only two weeks and had no objective signs which would indicate to them that the victim was only acting in jest[3].
When a person is backed into a corner at knife point and must repeatedly avoid the thrust of a huge knife, and where there are no objective signs to indicate that the aggressor is acting in jest, we feel that the ordinary person would have cause for *1301 apprehension and would likely take reasonable steps to protect himself. Although we have already concluded that the steps taken by the defendant were not reasonable, we do find that the circumstances were such that there was a sufficient provocation to deprive an average person of his self-control and cool reflection. We find that the defendant acted in sudden passion or heat of blood in the killing of Jeff Thompson, and that no rational trier of fact could have concluded otherwise. This view is reinforced by the fact that there had been no prior history of trouble between the two men, which makes this Court hard pressed to find any motive for the killing other than a reaction to the provocation of the victim.
For the aforementioned reasons, the conviction and sentence of defendant on the charge of second degree murder is hereby reversed. This Court now renders a judgment of conviction on the lesser included responsive offense of manslaughter under LSA-C.Cr.P. Art. 821(E). This case is now remanded to the trial court for sentencing.
REVERSED, MODIFIED AND REMANDED.
DOMENGEAUX, J., dissents and assigns written reasons.
DOMENGEAUX, Judge, dissenting.
I respectfully suggest that my esteemed colleagues of the majority have erred egregiously in two instances. Firstly, defendant's assignment of error No. 2 was not briefed and we should not consider it. As indicated in footnote 1 of the majority opinion, our own Uniform Rules prohibit such consideration and the fiat of the Louisiana Supreme Court does likewise. I know of no exception in our procedure which allows us to disinter this dead issue. Secondly, the first error is compounded by second guessing the trial jury on purely factual matters.
This is a classic example of what happens when Jackson v. Virginia creeps over the horizon. I regret to say that I find, in some instances, our appellate courts, although in conscientious efforts to follow Jackson v. Virginia, fail to "view the evidence in the light most favorable to the prosecution."
After applying the "favorable light" perusal to the prosecution's evidence in this case, I find absolutely no difficulty in concluding that this conviction should be affirmed, and that we should not, under any pretext, attempt to second guess the trial jury.
This conviction should be affirmed.
For a further elaboration of my views on the question of review of facts in criminal matters see my concurring opinions in State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983).
NOTES
[1] Assignment of error No. 2 was not briefed and would normally be considered as abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); Uniform Rules, Courts of Appeal, Rule 2-12.4. In the interest of justice, however, we feel compelled to reach this issue.
[2] LSA-C.Cr.P. Art. 858 provides:

"Art. 858. Review of ruling on motion for new trial
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law."
[3] The record reveals the following colloquy between the defendant and his counsel on direct examination:

"Q. Did you have any ideas ... has anyone ever said to you before that Jeff just likes to fun?
A. No, nobody ever said nothing to me.
Q. Do you think he was funning?
A. No, he couldn't have been funning, you know.
Q. Why couldn't he have been funning?
A. Not with a knife, I don't guess. A grown man playing with a knife doesn't seem like an every day thing to me."