540 So.2d 556 (1989)
STATE of Louisiana
v.
Timothy W. PERKINS.
No. CR88-494.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
*557 David Stone, Alexandria, for defendant-appellant.
Michael Shannon, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.
On April 22, 1987, the defendant, Timothy Perkins, was indicted by a Grand Jury for second degree murder, a violation of La.R.S. 14:30.1. The Trial Court denied the defendant's motion to suppress inculpatory statements and subsequent thereto, a jury of twelve unanimously found the defendant guilty as charged. The defendant has appealed his conviction based on two assignments of error.

FACTS
On the night of February 28, 1987, in Glenmora, Louisiana, a group of teenagers were gathered at an area Dairy Queen restaurant. A confrontation arose between William Perkins and Darrell Henry. A fist fight ensued, during which Henry was rendered unconscious. After the fight, Perkins reportedly apologized to Henry and then left the scene. At this point, the defendant, Timothy Perkins, a friend of Henry's stated that he intended to kill William Perkins.
Around 11:00 p.m., Henry, the defendant and another friend, Kevin Grantham, drove past the defendant's place of employment (a tire repair business) and the defendant fired a shotgun blast at a metal building on the property. The trio then went to the defendant's residence where the defendant repeated his threat to kill William Perkins. Henry then left the defendant's residence.
*558 After responding to a complaint of the shooting at the tire repair business, the police learned the foregoing facts and that Grantham and the defendant had been seen on Highway 113 following William Perkins' vehicle. The police drove down Highway 113 in search of the parties. Approximately six miles down the road, the police found William Perkins' truck crashed into a ditch along the side of the road with both lights and radio still on. The body of William Perkins was found behind the wheel. He had been hit by a shotgun blast on the left side of his face and neck.
The investigation immediately focused on the defendant and Grantham. Police searched the defendant's home, a nearby campsite and an unoccupied house near the defendant's residence. The police decided to use tracking dogs after seeing an unidentified individual flee into the woods near the defendant's home. Upon arriving at the defendant's home to obtain an item of defendant's personal belonging to assist the tracking dogs, the defendant was found at his residence and peaceably surrendered. The defendant began to speak but was told by the arresting officer not to say anything. After the defendant was brought outside and searched, four .20 gauge shotgun shells were seized from the house. A police detective arrived and advised the defendant of his Miranda rights. After the defendant indicated that he understood his rights, he was asked about the earlier shooting. The defendant stated that after the fight, he and Grantham sawed off the shotgun barrel and went in search of William Perkins. Observing Perkins' truck on Highway 113, the pair followed. The defendant, riding as the passenger, instructed Grantham to pass Perkins' vehicle. As they were passing, the defendant fired a single shot at the driver's window. After the defendant and Grantham saw Perkins' truck go into the ditch, they fled the scene.
A witness who was present when the defendant arrived at home testified that the defendant arrived with a .20 gauge sawed-off shotgun. In response to an inquiry from his father, the defendant stated that he had shot the victim and had "meant to do it." After the defendant's parents consented to a search of their home, police seized a sawed off .20 gauge shotgun.
The defendant was again advised of his rights when he was brought to the police station. After again indicating that he understood his rights, the defendant signed a waiver of rights form and agreed to make a formal statement to a detective. As the detective was preparing a tape recorder, the defendant told the officer, "I don't know if I want to say too much into that thing or not." The officer responded, "That's your right. You don't have to talk to us unless you want to. You've already confessed to us. We're just trying to learn some more details of what happened this night but you have the right to have your lawyer present just like I read to you." The defendant then stated that he would give his statement. In the statement, the defendant essentially repeated the details of the earlier oral confession. The defendant admitted telling Grantham that he was going to kill the victim, stated that he did shoot the victim and identified the gun he used in the shooting.

ASSIGNMENT OF ERROR NO. 1
The defendant argues that the Trial Court erred in denying his motion to suppress his recorded confession because this confession was taken after he asserted his Fifth Amendment privilege against self incrimination. Also, the defendant contends that the statement by the police detective coerced him into giving his statement which he would not have otherwise given.
La. Const. Art. I, § 13 requires that any person arrested or detained in connection with the investigation or commission of any offense must be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self incrimination, his right to assistance of counsel, and if indigent, his right to Court appointed counsel. By adoption of this provision, Louisiana enhanced and incorporated the protection provided for accused persons under the Fifth Amendment to the United States Constitution announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 *559 L.Ed.2d 694 (1966); State v. Rodrigue, 409 So.2d 556 (La.1982). Before the State may introduce a confession or inculpatory statement, it must affirmatively prove that it was given freely and voluntarily and not made under influence of fear, duress, intimidation, inducements or promises. La.C. Cr.P. art. 703(D). A Trial Court's finding that a confession is free and voluntary and, therefore, admissible will not be overturned unless not supported by the evidence. State v. Thompson, 399 So.2d 1161 (La. 1981). When the accused invokes his right to silence, the police must scrupulously honor the right to cut off questioning by the person in custody. The Courts must look to the facts of each case and the precepts underlining Miranda to determine if the police engaged in conduct in obtaining a confession which destroyed the accused's confidence in his right to cut off questioning. State v. Charles, 511 So.2d 1164 (La.App. 1st Cir.), writ denied, 515 So.2d 1107 (La.1987).
The defendant argues that his remarks made prior to giving the taped confession indicated that he wished to invoke his Fifth Amendment privilege against self incrimination. After reviewing the full context of the conversation from which the statement was taken, it does not appear that the defendant was invoking his Fifth Amendment privilege against self incrimination. At best, it appears that the defendant may have been questioning whether to give a recorded statement, as opposed to his previous unrecorded statement, but the remarks clearly do not constitute an invocation of his right to remain silent. We note that following this apparent hesitancy on the part of the defendant, the police officer reminded the defendant of his Fifth Amendment privilege against self incrimination and of the defendant's right to consult an attorney. At this point, after having been reminded of his rights the defendant waived these rights and proceeded to confess, again.
We also find no merit to the defendant's assertion that the defendant was coerced into giving his statement when the police officer said that the defendant had already confessed. This was simply stating a fact which in no manner undermined the defendant's right to invoke his Fifth Amendment privilege nor did it coerce him into continuing his statement.
The evidence clearly establishes that the recorded statement was voluntary and was not made under influence of fear, intimidation, coercion or inducements. Additionally, it is apparent that the officers carefully protected the defendant's rights during the custodial interrogation.
As the Trial Court's ruling is supported by the evidence, it shall not be overruled.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
The defendant also argues that the State failed to prove an essential element of the crime beyond a reasonable doubt; namely, that the defendant possessed the requisite specific intent to kill the victim. The defendant argues that his confession established that he did not intend to kill the victim when the fatal shot was fired and that his statements that he intended to kill the victim should be considered "typical braggadocio" of a young man who had been drinking.
The defendant was charged with second degree murder under the provisions of La. R.S. 14:30.1(1) which require that the State prove he had the specific intent to kill or to inflict great bodily harm. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La. 1981). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Graham, 420 So.2d 1126 (La.1982). When reviewing a conviction, an Appellate Court views all evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could conclude that the *560 State proves the defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1978).[1]
At the trial, the defense counsel admitted that the victim died as the result of a gunshot wound fired by the defendant. The only issue contested was whether the defendant had the requisite criminal intent to be convicted of second degree murder. It is uncontested that the fatal shot was fired from a sawed off shotgun into a moving vehicle operated by the victim. The defendant argues, however, that no specific intent was shown because in his statement he denies seeing the victim's face when the fatal shot was discharged because the window to the victim's vehicle was up when the shot was fired.
Specific intent to kill or inflict great bodily harm can easily be inferred where an individual discharges a firearm pointed directly at a victim from a short distance. State v. Noble, 425 So.2d 734 (La.1983). The fact that the victim is behind a glass enclosure does not negate a finding of specific intent. State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987).
While young men may often "talk big", particularly after imbibing in alcohol, the vocalizing of such threats takes on an altogether different meaning when the threat is carried out. Also, when questioned by the defendant's father regarding the killing, the defendant responded that he "meant to do it". It was totally proper for the trier of fact to consider the defendant's threats and inculpatory statements in determining whether the defendant possessed the requisite criminal intent. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact would have found the defendant guilty beyond a reasonable doubt of the crime of second degree murder.
For the reasons stated, this assignment of error has no merit.
For the foregoing reasons the conviction of the defendant is affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the Appellate Courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).