DOMENGEAUX, Judge.
Anita Kalathakis, the defendant, was indicted on February 19, 1987 by a grand jury with two counts of intentional manufacturing or possession with intent to distribute methamphetamine, a Schedule II controlled dangerous substance in violation of La.R.S. 14:27 and La.R.S. 40:967(A)(1). Kalathakis was also indicted for manslaughter, in violation of La.R.S. 14:31(2)(a) and attempted first degree murder in violation of La.R.S. 14:27 and La.R.S. 14:30.
The defendant pled not guilty to all charges and was tried by a jury on January 27, 28 and 29, 1988. The jury returned a verdict on one count of attempted manufacturing or possession with the intent to manufacture methamphetamine. The jury also found the defendant guilty of manslaughter and attempted manslaughter.
On February 3, 1988, Kalathakis was sentenced to serve five years at hard labor for the drug-related offense, four years at hard labor for the manslaughter conviction and two years at hard labor for the attempted manslaughter conviction. The defendant now appeals her convictions and sentences assigning nine errors.
FACTS
Kalathakis’ convictions stem from a police raid on the mobile home in which she resided with Patrick Langley and Langley’s two children. The raid occurred on February 8, 1987, and involved Drug Enforcement Administration agents, state police officers, Calcasieu Parish narcotics deputies, and Calcasieu Parish police officers. The officers suspected that the mobile home served as a laboratory for the production of methamphetamine, a Schedule II controlled dangerous substance. The raid resulted in the arrest of Kalathakis and Langley, but did not end before one of the officers was wounded and one of the suspects, Larry Calhoun, was killed.
The mobile home and the operations therein were the subject of a police investigation which began in 1986. In February, 1986, Langley was arrested and charged with manufacturing methamphetamine in the trailer. He pled guilty to the charge. Langley was the target of this subsequent investigation.
On February 7, 1987, a controlled narcotics transaction transpired between a confidential police informant and Langley. On the following night, fourteen law enforcement officers drove to the mobile home which was located between DeQuincy and Sulphur. Once the officers arrived, they divided into two assault teams. The first team approached the trailer on foot and the second team approached in vehicles.
The first team brought two trained police dogs. After they positioned themselves around the trailer, they noticed a heavily-armed person leaving the trailer and walking toward a shed behind it. This person, later identified as Larry Calhoun, had dogs with him as he walked to the shed. Calhoun’s animals apparently sensed the police dogs and began barking. Calhoun directed his flashlight towards the police officers. At this point the officers stood up and identified themselves.
Calhoun began to run down the driveway just as the second team approached in their vehicles. Three officers and two of the police dogs pursued Calhoun. Just after this chase began, the other officers rushed the mobile home.
Three of the officers entered the mobile home. State Trooper Daughtery entered first, shouting, “Police coming in. Police.” Daughtery was familiar with the floor plan of the trailer because he had previously conducted an undercover purchase there.
He continued to shout, “Police!” as he made his way through the trailer. He heard glass breaking and a policeman shout, “Drop the gun!” He ran toward the sound, kicked in the bedroom door and confronted the defendant.
*1007 Deputy Folds was outside the trailer looking through the bedroom window and saw the defendant with a pistol in a holster raised above her head. He believed the defendant had positioned herself in a “combat stance” in order to shoot whoever entered the room. He testified that the defendant had her finger on the trigger and that her “trigger finger” was on her right hand. Knowing officers were inside the trailer, he broke the bedroom window and ordered the defendant to drop the weapon. The defendant complied.
Once Daughtery entered the bedroom, Folds alerted him that the gun had fallen by the defendant’s feet. The weapon was a .44 magnum. Drug Enforcement Administration agent Gioganti followed Daugh-tery into the bedroom and handcuffed the defendant.
Daughtery then heard noises coming from the bathroom. He kicked in the bathroom door and saw Langley attempting to empty a dark brown liquid down the bathtub drain. He noticed a heavy chemical odor that he knew was produced during the manufacture of methamphetamine.
Chief Detective Frayar also entered the bathroom and noticed that one-fourth of the tub was still filled with the brown liquid. He could not find a drain stopper, however, and his attempts to prevent the substance from draining with a towel were unsuccessful.
In addition to drug paraphernalia, a police radio scanner was found in the trailer. This scanner monitered transmissions on police radios. As the officers in the trailer arrested Langley, they heard over the scanner that a deputy who had followed Calhoun had been shot and that an ambulance was needed.
During the pursuit of Calhoun, approximately one-quarter of a mile from the trailer, Calhoun turned quickly and fired a sawed-off shotgun hitting Sheriff’s Deputy Bobby Stolsteimer. The officers returned the fire, wounding Calhoun. Calhoun died before an ambulance could arrive.
Kalathakis was charged with manufacturing methamphetamine in 1986 and 1987, attempted first degree murder of a police officer, and the manslaughter of Calhoun. At trial, the defendant called only one witness, Langley. Langley had been charged with manufacturing methamphetamine and had pled guilty. He admitted producing narcotics in the trailer, but said that the defendant neither knew of the operation nor assisted him in any fashion.
Langley testified that the substance seen by the police was methamphetamine, but he disputed the quantity which the police said was in the bathtub. He claimed a person named Wiley Anderson brought the drug to him in a crystallized form on January 4, 1987. Anderson had not prepared the drug correctly and took it to the mobile home so that Langley could “reclaim” the drug. He testified that the defendant was upset when she learned Langley agreed to produce the narcotics and threatened to leave him.
On cross-examination, Langley admitted that the defendant may have “had an idea” that items she had purchased for him at a store might be used in producing methamphetamine. These items included denatured alcohol, coffee filters, acetone, and distilled water.
Lastly, Langley attempted to rebut the State’s witness who testified that he saw the defendant hold the trigger of the .44 magnum with her “trigger finger”. Langley testified that he had seen the defendant shoot a gun, that she was left-handed and that she would have used her left hand had she intended to pull the trigger.
The jury acquitted the defendant on the 1986 drug related offense, but convicted her on other charges. A guilty verdict was returned convicting the defendant of the attempted manufacture of methamphetamine, attempted manslaughter, and the manslaughter of Calhoun. The jury lodged disagreement with holding the defendant responsible for Calhoun’s death, but stated through the jury foreman that they felt constrained to do so in order to apply the law as instructed by the Trial Judge.
ASSIGNMENT OF ERROR NO. 1
Kalathakis was convicted of manslaughter pursuant to R.S. 14:31(2)(a) which states:
*1008 Manslaughter is:
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person.
“Homicide” is defined as “the killing of a human being by the act, procurement or éulpable omission of another.” La.R.S. 14:29.
The jury found the defendant attempted to manufacture methamphetamine, a felony not enumerated in Articles 30 or 30.1. While she did not intend for Calhoun to be killed, he was in fact killed when she was engaged in the attempted perpetration of producing methamphetamine. The State argues that the facts in this case squarely fit the statute.
Kalathakis moved to quash the manslaughter indictment arguing that it was not founded in law. The motion was denied and she now raises the same contention asking this Court to reverse her conviction. Kalathakis contends that she should not be held responsible for Calhoun’s death because the causal link between her actions and his death is too tenuous. She argues that officers were arresting her inside the mobile home when Calhoun was killed one-quarter of a mile away from the trailer. She further argues that Calhoun's death was not concomitant with her production of drugs, but rather, resulted from Calhoun’s decision to fire at the police officers to effect his escape. The defendant contends that Calhoun himself was responsible for his death because his actions caused the pólice officers to shoot him in self-defense. The reasoning underlying her position is that when Calhoun fired his sawed-off shotgun at the police, an intervening incident occurred separating her from any culpability for the events which followed.
Our review of the law and the facts of this case lead us to disagree with the defendant. Calhoun died directly as the result of Kalathakis’ acts of attempting to produce methamphetamine. We believe as stated in Annot., 12 A.L.R. 2d 210 (1950):
where it reasonably might or should be foreseen by the accused that the commission of or attempt to commit the contemplated felony would be likely to create a situation which would expose another to the danger of injury at the hands of a nonparticipant in the felony, the creation of such dangerous situation is to be regarded as the proximate cause of death from the injury.
When Kalathakis initiated the attempted production of methamphetamine she and her accomplices armed themselves with dangerous weapons as part of their overall scheme. Her actions set into motion a chain of events within which simple contemplation would reveal a great risk of death. Calhoun’s death was within the ambit of reasonably forseeable possibilities; he and Kalathakis had no reason to so heavily arm themselves except to protect themselves from their own kind or to frustrate the efforts of law enforcement officers attempting to uphold society’s standards of behavior.
Lending some support, but not what we believe to be definitive support, to the defendant’s position is the case of State v. Garner, 238 La. 563, 115 So.2d 855 (1959). Garner involved the attempted murder of a bartender. The defendant in Gamer was charged with manslaughter as the result of the death of an innocent bystander who was fatally wounded by the bartender. The bartender shot at the defendant in self-defense, but struck the deceased.
The State Supreme Court, in upholding Garner’s motion to quash, stated that the word “offender” in R.S. 14:31 referred to the “killer.” The Court was constrained by the doctrine that penal statutes should be strictly construed.
Granting unto our State Supreme Court the great regard its decisions deserve and well aware that only the legislature may determine what behavior may be penalized, we do not believe Gamer is on all-fours with the instant case. The deceased in Gamer was an innocent third party who *1009 by mere fate was at the scene of the crime and was shot by the victim of the crime. In the instant case, the deceased was not an innocent bystander, but rather, was an active participant who without any anticipation that his operation was in danger, was toting a sawed-off shotgun and wearing an ammunition belt with at least nine live shells when he was approached by the police. He was not just out shooting quail.
Further distinguishing the instant case from Gamer is the fact that the fatal shots were fired by police officers, whom both the deceased and Kalathakis were aware might attempt to deter their activities. In fact, Kalathakis had a police radio so that she might be alerted in advance of a raid.
Calhoun was not just an innocent bystander, and he was not shot by the victim of the crime. He was an active participant fatally wounded by persons he and the defendant knew would attempt to stop their production of illegal drugs.
A strict reading of the manslaughter statute mandates that this conviction be upheld. The Criminal Code was drafted to punish conduct which society considers culpable. Section 31 of the Criminal Code punishes the unintended results of culpable conduct. Kalathakis was engaged in criminal activity along with Calhoun, and his death was a direct result of their entire operation.
The State cites the case of State v. Statum, 390 So.2d 886 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981), in support of the proposition that the defendant’s manslaughter conviction is valid. The defendant in Statum intended to violate La.R.S. 14:80, carnal knowledge of a juvenile, a felony not enumerated in R.S. 14:30 or 14:30.1. While he was driving his automobile with the victim as his passenger, he made his criminal intentions known to her. The victim, a thirteen-year-old girl, responded by jumping from the moving vehicle. The car was traveling in excess of fifty miles per hour and she died from injuries sustained in her fall.
The Supreme Court upheld Statum’s manslaughter conviction because he was in the perpetration of attempted carnal knowledge, and an unintended killing resulted. The Statum Court employed the felony-murder doctrine pursuant to R.S. 14:31(2)(a) to support the conviction. In the instant case, as in Statum, the actual killing did not occur at the hands of the defendant, but rather, as the result of the acts of another. We believe the Statum decision bolsters our decision in the instant case and reflects the stricter interpretative approach to manslaughter that we follow.
Kalathakis filed a supplemental brief in which she also argues that if this Court should uphold the manslaughter conviction, her constitutional right against double jeopardy would be violated. The defendant relies on State v. Bradford, 514 So.2d 534 (La.App. 3rd Cir.1987), writ denied, 523 So.2d 226 (La.1988), cert. denied, — U.S.-, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988).
The Bradford decision reiterated the principle that double jeopardy prevents an accused from being sentenced to multiple punishments for the same criminal conduct. Kalathakis argues that a separate conviction for the underlying felony in addition to a conviction for manslaughter would violate this principle and subject her to double jeopardy. We do not believe Kalathakis is being punished twice for the same conduct.
Kalathakis was convicted of attempted manufacture of a controlled dangerous substance and of the manslaughter of her accomplice, and was punished for both offenses. The fact that she attempted to manufacture methamphetamine directly caused the decedent’s death, because the events which she set in motion resulted in the shooting.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
Kalathakis argues, in this assignment of error, that her conviction of manslaughter for the death of Calhoun was not founded in law; therefore, the denial of her motion to quash the manslaughter indictment was error. As we discussed above, her conviction is supported by R.S. 14:31(2)(a). For the reasons assigned above, we do not be *1010 lieve the Trial Judge erred in denying the defendant’s motion to quash.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
The defendant contends that because the Judge erroneously allowed the State to. proceed with the manslaughter charge, evidence of Calhoun’s death was introduced and created undue prejudice against her. The defendant argues that the testimony and pictures concerning Calhoun turned the jurors’ minds against her on the drug related offense. Consequently, she argues her manufacturing conviction should be overturned.[1] We have reviewed the defendant’s assignment and do not believe that the manufacturing conviction should be overturned. No undue prejudice resulted from the introduction of the evidence because the jury reluctantly found the defendant guilty of manslaughter. The jury, through the jury foreman, specifically stated that they found her guilty only because they believed it was their duty in carrying out the law. There was, moreover, ample evidence supporting the defendant’s other convictions as will be discussed below.
Assignment of Error No. 3 has no merit.
ASSIGNMENT OF ERROR NO. 4
The defendant contends that she should not have been convicted of manslaughter because the felony underlying the grand jury charge was the completed offense of manufacturing methamphetamine. Because she was convicted of only the attempted manufacture of methamphetamine, Kalathakis argues that the indictment was defective and does not support the manslaughter charge. The defendant did not, however, cite any authority for this proposition.
The contention raised by the defendant is meritless. The purpose of the indictment was to inform the defendant of the crime she was accused of violating. An indictment charging a defendant with a completed offense informs the defendant that she must prepare a defense for that charge and every lesser included offense. “An attempt is a separate but lesser grade” of a completed crime. La.R.S. 14:27(C). The defendant was, therefore, adequately notified that attempted manufacturing was among the crimes with which she was charged. There was no error in the indictment, and nothing the defendant raises in this assignment invalidates her manslaughter conviction.
“It remains a mandate in the law to draft indictments in such a manner that they satisfy the constitutional right of the accused to be informed of the nature and cause of the accusation against him ... and, - at the same time, requirements for drafting the indictment should not create technical traps for district attorneys.” State v. Scott, 278 So.2d 121, 123 (La.1973). A requirement that the District Attorney must list all lesser included offenses when drafting an indictment is a technical trap which would not substantially increase notice to the defendant.
Consequently, Assignment of Error No. 4 lacks merit.
ASSIGNMENT OF ERROR NO. 5
Kalathakis contends that the State failed to prove that she was aiding in the manufacturing of methamphetamine and that her conviction for the attempted manufacture should be set aside. She argues that the State merely proved that she was in the presence of a controlled dangerous substance, or at most, in the association of a person in possession. Kalathakis’ defense at trial was that she was ignorant of Langley’s operation in the trailer. The essence of Assignment No. 5 is a claim of *1011 insufficiency of the evidence.[2]
When a defendant claims there is too little evidence to support his conviction, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could conclude that the State proved every essential element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury found the defendant guilty of attempted manufacturing of methamphetamine. Pursuant to R.S. 14:27 an attempt is committed when a person “having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.” The statute further provides that it is immaterial whether the accused would have actually accomplished his purpose.
The State introduced an abundance of physical evidence taken from the mobile home, much of which was laced with traces of methamphetamine. Many of the exhibits were used in the production of the drug and Langley testified the defendant routinely" purchased the necessary items. Langley also admitted the defendant may have had an idea that those items were used to produce illegal narcotics. The jury apparently concluded that Langley and the defendant operated the lab together and that Kalathakis’ defense of ignorance was not credible. Furthermore, the defendant’s routine purchases of the necessary elements for the production of the drug proved complicity on her part.
When the police arrived Langley was “reclaiming” liquid methamphetamine in a bathtub. He testified that the drug was produced incorrectly by a person named Anderson. Langley’s efforts to correct Anderson’s mistake was an act tending directly toward the production of methamphetamine and was an attempt to commit the offense. Kalathakis, as a principal pursuant to La.R.S. 14:24, is criminally liable for the felony of attempted manufacturing of a controlled dangerous substance.
The State sufficiently proved each element of attempted manufacturing so that any rational trier of fact could find the defendant guilty of this offense beyond a reasonable doubt.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 6
Kalathakis contends that the Trial Judge imposed an excessive sentence for the attempted manufacturing conviction.[3] The defendant was sentenced to the maximum prison term of five years at hard labor for this offense. R.S. 14:27(D)(3); R.S. 40:967(B)(3). The Judge noted the serious nature of this offense at the sentencing hearing. Furthermore, the Judge was convinced of the correctness of the jury’s verdict, stating that there was “absolutely no way with all the various paraphernalia that [the defendant] could not have known” of the drug production. Although the Trial Judge did not enumerate every aggravating and mitigating circumstance, the size of the defendant’s operation easily supports his decision.
The defendant also contends that even though the sentence is within the statutory limit, it is nevertheless unconstitu *1012 tionally excessive. An excessive sentence is one in which the penalty imposed is so greatly disproportionate to the crime committed in light of the harm to society as to shock one’s sense of justice. State v. Cann, 471 So.2d 701 (La.1985).
The violent and serious nature of this crime is evident from a review of the facts. Five years at hard labor for the commission of this crime does not shock one’s sense of justice.
Assignment of Error No. 6 has no merit.
ASSIGNMENT OF ERROR NO. 7
The defendant contends that the Trial Judge erred in failing to exclude the methamphetamine from evidence because the State failed to prove the chain of custody of the drug.
The State notes in its brief that the defendant did not contemporaneously object to the introduction of the prosecution’s exhibits and should be precluded from raising this objection on appeal. While it is true that defense counsel did not object to the introduction of many of the State’s exhibits he did timely object to the introduction of some. We find that all of the State’s exhibits were properly admitted.
The State introduced approximately one hundred fifty pieces of physical evidence taken from the mobile home and the surrounding area. The State called as witnesses the persons who transported these items from the crime scene, labeled the items and analyzed the items for traces of narcotics. Testimony was also presented as to the security of the room in which these items were stored prior to being placed in the crime lab vault. Although officers had to make two trips to the mobile home to collect all of the evidence, a policeman was stationed at the scene to protect the items and prevent tampering.
In view of the chain of custody established, the Trial Judge did not err in finding that these exhibits were, more probable than not, the same items originally seized at the mobile home. Moreover, a defect in the chain of title must go to the sufficiency of the evidence and not its admissibility. State v. Sam, 412 So.2d 1082 (La.1982); State v. Williams, 447 So.2d 495 (La.App. 3rd Cir.1984); writ denied, 450 So.2d 969 (La.1984).
Assignment of Error No. 7 lacks merit.
ASSIGNMENT OF ERROR NO. 8
Kalathakis contends that the jury erred in convicting her of attempted manslaughter because the evidence was insufficient to support a conviction.[4] The defendant was charged with attempted first degree murder of a police officer and the jury returned a guilty verdict for attempted manslaughter.
As stated above, when a defendant asserts that the evidence was insufficient to justify a conviction, the Appellate Court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could conclude beyond a reasonable doubt that the State proved the essential elements of the crime charged beyond a reasonable doubt. Jackson, supra.
Applying this standard to the testimony adduced by the State, Kalathakis’ conviction must be upheld. Officer Daugh-tery stated that he entered the mobile home shouting, “Police coming in. Police.” He continued to yell as he made his way through the trailer. It is reasonable to conclude that the defendant heard the officer shouting. Deputy Folds testified that he saw the defendant through the bedroom window poised to fire a weapon. Folds’ experience indicated to him that she intended to shoot whoever entered the bedroom. Viewing this evidence in the light most favorable to the prosecution compels the conclusion that the defendant intended to shoot Daughtery when he opened the bedroom door. The “combat stance” which Deputy Folds saw the defendant take behind the door is sufficient proof that the defendant was lying in wait with a dangerous weapon intending to kill or inflict great bodily harm on a police officer. This act *1013 constitutes an “attempt” pursuant to R.S. 14:27(B), and when such an act is perpetrated against a peace officer, it constitutes attempted first degree murder. R.S. 14:30(A)(2).
Attempted manslaughter is a valid responsive verdict to the offense of attempted first degree murder. La.Code Crim. Proc. art. 814(A)(2); State v. Williams, 327 So.2d 399 (La.1976). The defendant’s conviction is supported by the evidence and this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 9
The defendant contends in her last assignment of error that the jury erred in failing to find that she acted in self-defense. The defendant argues that the State must prove beyond a reasonable doubt that she did not act in self-defense.
Kalathakis correctly states the burden of proof when a defendant’s act of alleged self-defense results in a killing. La.R.S. 14:20; State v. Green, 483 So.2d 957 (La.1986); State v. Garcia, 483 So.2d 953 (La.1986). The instant case, however, is a non-homicide situation, because the defendant’s alleged act of self-defense did not result in a killing.
The .question of who bears the burden in non-homicide situations was presented to the Supreme Court in State v. Freeman, 427 So.2d 1161 (La.1983). The question was not answered then, because even if the State had to meet the reasonable doubt standard to prove the defendant did not act in self-defense, the Court found that burden was met. The same result can be reached in this case.
The defendant contends in her brief she mistook the policeman who entered her home for an unauthorized intruder. She claims she armed herself for her own protection. The statute on which the defendant must rely is La.R.S. 14:19 which justifies the use of force or violence to prevent a forcible felony against persons or a trespass against property. The force used in defending one’s self or property must be “reasonable and apparently necessary” under the circumstances. The police were executing a valid warrant. The evidence overwhelmingly suggests that the defendant knew the persons in her home were police officers. It is submitted that no forcible felony against the person nor trespass against property occurred justifying the defendant’s arming herself. Even if the defendant believed a trespass was occurring at the beginning of the raid, her action of arming herself was not apparently necessary once she heard the law enforcement officials identify themselves.
Assignment of Error No. 9 lacks merit.
For the above and foregoing reasons the conviction and sentence of Anita Kalathak-is is affirmed.
AFFIRMED.

. The State contends that the defendant actually raises three errors in Assignment No. 3: the jury instructions, a jury statement concerning its disagreement with the law, and the allegedly prejudicial photographs and testimony. It is submitted that the defendant only argues that the admission of evidence concerning Calhoun’s death was error. The jury instructions concerning manslaughter and the jury’s objection to those instructions form only part of the defendant’s argument and support for her stated assignment.

. Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing” the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1241 (La.1984), and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).

. The author of this opinion is compelled to again state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See, State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir.1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La.1983); State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169; State v. Rainwater, 457 So.2d 1280 (La.App. 3rd Cir.1984), concurring opinion at 1282.

. See footnote No. 2.