SCHOTT, Chief Judge.
Defendant was convicted of second degree murder in violation of LSA-R.S. 14:30.1 and sentenced to life imprisonment.
On January 5,1989 Detective Adams was called to 4417 Pauger Street to investigate the death of Bernie Weathers whose body was on the floor of the bedroom. A bloody ashtray was next to his body and a coconut was found in the den. Glitter from the coconut was found on the victim’s mattress and on his chest, and there was blood on the coconut. Pictures showed the victim naked and his head battered and bloody. Adams testified that the autopsy protocol revealed blunt trauma to the victim’s head.
Friends of the victim reported his car was missing, and it was later found in Point Coupee Parish. This led the police to the defendant who was arrested for the murder. The defendant gave the police a statement in which he admitted that “he hit [Weathers] with an ashtray and a coconut and then killed him”. He stated he had gotten into an argument with Weathers because he wanted defendant to perform some sexual act he did not want to perform. Other evidence showed they were homosexual lovers.
The physician who performed the autopsy on Weathers testified his death was consistent with having been struck on the head with a marble ashtray and a coconut; he found fractures, contusions, and injuries to the brain which resulted from considerable force, numerous lacerations which indicated a multitude of blows, and abrasions on the back on the hand indicating he tried to shield himself. He stated that the decedent may have survived had he been given prompt medical treatment.
A review of the record for errors patent reveals a minute entry fixing a hearing for a motion by defense counsel for a new trial without any other reference in the record to such a motion. We cannot presume that any such motion was ever properly filed; therefore, we do not find that sentencing was premature. Neither is the bill of indictment in the record. However, there is a minute entry reflecting the return of the indictment by the Grand Jury and recording that the indictment was signed by the foreperson and duly recorded and filed in open court by the minute clerk. Considering this minute entry and considering that defendant has assigned no error as to the absence of the bill of indictment, we deem it to be harmless.
The following colloquy which occurred during voir dire of the jury provides the basis for defendant’s first assignment of error:
BY MR. GARDNER:
The Defendant has the 5th Amendment right against self-incrimination. He has the right not to testify in this proceeding, and the upshot of that is that you cannot hold it against him should he fail to testify. And it’s always something that, you know, we want to hear both sides or whatever. That’s not how it works.
BY MR. MCCURDY:
Your Honor, I object and again move for a mistrial, because this statement is made, that we would all like to hear, is made solely to focus the jury’s attention on the—
BY MR. GARDNER:
No, Judge—
BY MR. MCCURDY:
—fact that the defendant may exercise his 5th Amendment right in this case.
BY THE COURT:
The Court would deny the request for a mistrial, note an objection to protect the record on the behalf of the Defense.
* * * * * *
BY MR. GARDNER:
Likewise, the defendant does have the right to testify should he choose, and if he does testify, would you say, “Well, he’s the defendant; he’s been accused of a most serious crime; and he’s been *1165 indicted, therefore, if he gets up there and says, I didn’t do it, or if he gets up there and says, there was a reason that I did it or whatever — ”
BY MR. MCCURDY:
Your Honor, I renew my objection. This is not reasonable, dwelling on this issue.
BY THE COURT:
I’ll overrule that.
BY MR. MCCURDY:
And to say that we’d like to hear from both sides is an invitation, a dare to the defendant to testify.
BY THE COURT:
Thank you. I’ll note your objection for the record again. The request for a mistrial is denied.
BY MR. GARDNER:
Thank you, Judge.
Defendant contends this constituted an impermissible comment by the prosecutor on defendant’s election against testifying in his behalf. In support of this argument he cites cases where the prosecutor made such references in closing argument. The disputed statements were made during voir dire, not during closing argument. They are similar to those considered by this court in State v. Thomas, 553 So.2d 980, 983 (La.App. 4th Cir.1989). As in Thomas, we do not consider the prosecutor’s statements to be an intentional reference to defendant’s election not to testify since it was not known at that point whether he would testify or not. This conclusion is supported by State v. Shea, 421 So.2d 200, 206 (La.1982). Thus, this assignment is without merit.
By his second assignment defendant argues the trial court erred in admitting his inculpatory written statement without allowing him to traverse the state’s witness who testified the statement was completely free and voluntary. There was a pre-trial hearing and ruling on defendant’s motion to suppress. This ruling was binding at the trial, C.Cr.P. art. 703(F); and the state complied with art. 703(G) by introducing, prior to its admission, evidence concerning the circumstances surrounding the making of the statement.
By his third assignment defendant contends the trial court erred in admitting into evidence five photographs which he calls “gruesome”. He acknowledges that such photographs are admissible if their probative value outweighs any prejudicial effect resulting from their display to the jury, but he argues these were unnecessarily cumulative in that a single such photograph would have corroborated the coroner’s testimony as to the injuries the victim sustained. These photographs, some showing the battered and bloody naked body of the victim, are indeed gruesome, but they have probative value which clearly outweighs any prejudicial effect they may have had. One of them shows only the bloody ashtray. Others show the body from various angles with the bloody ashtray nearby, and the others show the victim’s bloody, battered head. They tend to prove the ashtray was one of the murder weapons. More importantly, they tend to refute the defense that he was guilty only of manslaughter on the theory that he killed the victim in the heat of passion because they demonstrate the brutality of the beating inflicted on the victim.
Individually and collectively these photographs are necessary pieces of evidence supporting the state’s case that the defendant had the specific intent to kill the victim without the mitigation which would reduce his crime to manslaughter. Furthermore, we are not convinced that these photographs had any prejudicial effect on the jury which saw other unobjected to photographs; heard a “gruesome” coroner’s report; heard defendant’s statement as to why he killed the victim and as to his activities after the killing. These activities consisted of taking the victim’s car and driving to Point Coupee Parish where his relatives resided with the result that the crime was not known until two days later when a friend of the victim went into his apartment. The photographs were properly admitted into evidence.
By this fourth assignment, the defendant argues that the prosecutor’s clos *1166 ing argument discussed evidence not contained in the record in violation of C.Cr.P. art. 774.
During closing argument by the prosecutor, defense counsel objected to the following statement:
BY MR. GARDNER:
You heard what kind of man the victim was. You heard what kind of person he is, what his neighbors think of him, what his family thinks of him, what his school thinks of him.
The trial court overruled the objection.
There was testimony by several witnesses that the victim was not a man of violence or aggression. This evidence had some probative value with respect to issues of self defense and manslaughter as opposed to murder. Consequently, the objection was properly overruled.
By his final assignment defendant argues that the evidence was insufficient to justify the finding of second degree murder, rather than manslaughter. The defendant’s written statement established that the defendant killed the victim. The defense contends that the statement also “established the mitigating factors of manslaughter defeating any specific intent to kill or inflict great bodily harm on the defendant’s part.” The defendant must establish mitigating, factors by a preponderance of the evidence. State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.), cert. denied, 458 So.2d 128 (La.1984); State v. Lombard, 486 So.2d 106 (La.1986). The defendant’s statement does not establish the mitigating factors suggested by the defense. The defendant did not say that he was threatened or assaulted by the victim. Defendant said only that the victim “asked” him to have sex in a way that he would not have sex. On the other hand, there was no sign of injury to defendant, and the brutality of the beating provided the jury with a basis to conclude that the defendant intended to kill or inflict great bodily harm on the victim and that the defendant failed to prove by a preponderance of the evidence the mitigating factors which would have reduced the crime to manslaughter.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.